## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### TAMPA DIVISION

**JUDITH L. WIERCIOCH,**

      **Plaintiff,**

**v.**                         **Case No.  8:11-cv-2129-T-30EAJ**

**VERIZON FLORIDA, LLC,**

      **Defendant.**

_____/

### ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. 21) and Plaintiff's Response to Defendant's Motion for Summary Judgment (Dkt. 23).  The Court, having reviewed the motion, response, record evidence, and being otherwise advised in the premises, concludes the motion for summary judgment should be granted.

### BACKGROUND FACTS[1]

Plaintiff Judith Wiercioch ("Wiercioch") initiated this action by filing a four-count complaint against Defendant Verizon Florida, LLC ("Verizon").  In Counts I and III, Wiercioch alleges she suffered sexual harassment by employees of Verizon in violation of the Florida Civil Rights Act ("FCRA") and Title VII of the Civil Rights Act of 1964 ("Title VII").  In Counts II and IV, Wiercioch alleges she suffered retaliation by Verizon in violation

---

[1]These facts are taken in a light most favorable to Wiercioch, the non-movant.

of the FCRA and Title VII.  Wiercioch withdraws her retaliation claims in Counts II and IV in her response to Verizon's motion for summary judgment.[2]

Verizon has employed Wiercioch for almost fourteen years.  In 2007, Wiercioch worked as a Consumer Zone Technician I for Verizon in the Toll3 workgroup where she was the only female in that particular unit.  Near the end of 2008, Wiercioch began to encounter personality difficulties with Albert Williams, one of her co-workers.  Her fear of Williams escalated until she "suffered a mental breakdown on the job" on January 18, 2010.  Dkt. 2., Complaint.

Although the specific words and dates of harassment are not clear from the record, Wiercioch testified that Williams became increasingly aggressive, loud, and angry towards her from December 2008 to January 2010.  In her deposition, Wiercioch describes Williams as "loud and in my face and he was very demeaning and very condescending towards me." Dkt. 22, 10:22-23.  She also expressed her fear that "he could be dangerous and I saw a violent streak there that worried me" and that she was in fear for her personal safety.  Dkt. 22, 23:19-20.  Wiercioch admitted that Williams never touched her or verbally threatened to touch her.

Wiercioch remembers Williams muttering under his breath phrases like "dumb bitch" or "f'ing bitch."  Dkt. 22-1, 235:17 & 236:6.  Williams would also tell Wiercioch that she was just like his wife.  Wiercioch did not testify as to how many times phrases like this were

---

[2]The background facts stated herein are limited to Wiercioch's sexual harassment claims because she withdrew her retaliation claims.

used during her tenure in the Toll3 workgroup.  She also did not testify that she ever reported to her direct supervisors that Williams used profanity directed at her, but she did tell management that he would compare her to his wife.

In February 2009, Wiercioch said that Williams "flew off the handle" and started screaming at her.  She could not remember the exact details of this incident, but it unnerved her enough to prompt her first complaint to Chris Navarro, her direct supervisor, on March 4, 2009.  Wiercioch stated she believed Navarro spoke with Williams about his behavior, but she is not sure what action Navarro took.

On March 25, 2009, Wiercioch met with Steve Glogowski, another Verizon manager, to inquire about openings in other central offices.  During this meeting, Wiercioch complained about Williams and apparently mentioned difficulties with Rocky Devoe, another male coworker.  To address her concerns, Glogowski arranged a meeting on March 26, 2009, between himself, Wiercioch, Williams, Devoe, and Rich Heyman, who served as an independent witness.  Wiercioch expressed her dislike of Williams' temper and being compared to his wife.  Williams responded that she was only complaining about him because he was black.  Wiercioch became very upset by this accusation and left the meeting.  She has not spoken to Williams since that day.

In June 2009, Wiercioch reported to Navarro that she saw her male coworkers watching sexually explicit and violent images on the television in Toll3's break room.  She described the sexually explicit material as "cheerleaders naked on a pole" and that she was "highly offended." Dkt. 22, 125:7-8, 126:1.  She described the violent images as "people

beat[ing] the crap out of each other like in a ring. . . it's really horrible, it's very bloody, it's really brutal." Dkt. 22, 120:1-4. Both incidents occurred only once and Verizon removed the televisions the next day after she complained.

On June 14, 2009, Wiercioch called Verizon's EEO hotline to voice her growing concern with Williams. She told the hotline operator that he was intimidating and condescending and that she feared for her safety and the safety of her dogs based on rumors she had heard from other employees. Wiercioch cannot recall who any of the employees were who told her to be careful with Williams.

In August 2009, Wiercioch requested two floating holidays, but Verizon only granted her request for one of the days. Wiercioch filed a grievance in response to this one-day denial. The second step meeting for this grievance occurred on November 18, 2009. At that time, Wierioch provided Verizon with pictures of inappropriate magazines, such as *Maxim*, that she had found in Toll3's break room. Wierioch testified that more indecent magazines, like *Playboy*, were present, but that she chose not to photograph them because Devoe's name was on them and she did not want to get him fired. After making this report, Wierioch left for vacation and, upon return, the magazines were gone.

Wiercioch's fear of Williams culminated in her emotional breakdown on January 18, 2010. She reported to work at midnight to find the third floor of Toll3 dark and a strange smell permeated the place. She sincerely believed that Williams was lying in wait to kill her, even though she had not spoken to him in months and he was not on duty during that shift. Wiercioch called Dawn Torres, another supervisor, who found her curled up in a corner

trembling in fear.  After that work shift, Wiercioch took six months of medical leave before returning to work in July 2010.  She did not raise any complaints about the work environment after her medical leave.  On July 23, 2011, Wiercioch was awarded a job in the Order Control Office and admits she is "very satisfied" with her position.

<u>**SUMMARY JUDGMENT STANDARD OF REVIEW**</u>

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original).  The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that

there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.,* 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

To establish a *prima facie* case of sexual harassment based on a hostile work environment, a plaintiff must show

> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive work environment; and (5) a basis for holding the employer liable.

*Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (en banc)

(quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc).[3]

Verizon contends that Wierioch has failed to establish a *prima facie* showing that she was harassed because of her sex, that the alleged harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create a discriminatorily abusive working environment, and that there is a basis for holding Verizon liable. The Court agrees that Wierioch cannot point to specific facts in the record to create a genuine dispute of material facts as to the last two elements. Therefore, the Court grants Verizon's motion for summary judgment.

1.      **Harassment Based on Sex of Wierioch**

Before allegedly harassing statements and conduct can be considered in determining whether the severe or pervasive requirement is met, such statements and conduct must be shown to have been based upon the plaintiff's sex. *See Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000). It is bedrock law that not all objectionable conduct or language amounts to discrimination under Title VII. *Reeves*, 594 F.3d at 809. Accordingly, "[i]nnocuous statements or conduct, or boorish ones that do not relate to the sex of the actor or of the offended party (the plaintiff), are not counted. Title VII, as it has been aptly observed, is not a 'general civility code.'" *Gupta*, 212 F.3d at 583.

---

[3] The same standard also applies to a hostile work environment sexual harassment claim under the FCRA. *Blizzard v. Appliance Direct, Inc.*, 16 So. 3d 922, 927 (Fla. 5th DCA 2009).

However, "a member of a protected group cannot be forced to endure pervasive, derogatory conduct and references that are gender-specific in the workplace, just because the workplace may be otherwise rife with generally indiscriminate vulgar conduct." *Reeves*, 594 F.3d at 810. Not all profanity is gender-specific, particularly given the profane language's context. *Id.* However, the term "bitch" is gender-derogatory and more degrading when directed towards women than men. *Id.* "Calling a female colleague a 'bitch' is firmly rooted in gender." *Id.*

The record reflects that on certain occasions Williams would "say stuff under his breath like that dumb bitch and things like that." Dkt. 22-1, 235:16-17. As the Eleventh Circuit has stated, referring to a female coworker as a "bitch" is gender-derogatory. Therefore, Wiercioch has met her burden to show there are disputed material facts preventing summary judgment as to whether she suffered harassment because of her sex.

**2.   Severity or Pervasiveness Insufficient to Create Hostile Environment**

To establish the fourth prong of the sexual harassment test, a plaintiff must prove that the harassing conduct was sufficiently severe or pervasive to alter her terms or conditions of employment. *Mendoza*, 195 F.3d at 1246. The environment must be subjectively *and* objectively hostile. *Reeves*, 594 F.3d at 809. "The employee must 'subjectively perceive' the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Id.* (quoting *Mendoza*, 195 F.3d at 1246. "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the

circumstances.'" *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

In determining the objective component, the Supreme Court has instructed that all the circumstances must be taken into account, including the discriminatory conduct's "frequency . . .; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.   However, the law is clear that teasing, offhand comments, and isolated incidents (unless extreme) will not amount to discriminatory changes in the terms and conditions of employment.   *Mendoza*, 195 F.3d at 1245.   Rather, Title VII protects against "disadvantageous terms or conditions of employment which members of the other sex are not exposed."   *Oncale*, 523 U.S. at 80.

The Court begins by noting that there is a difference between being harassed because of one's sex and being harassed because of personal animus by another coworker.  This case more squarely fits the latter.  The record is replete with evidence indicating that Wiercioch subjectively felt that Williams' harassment was so severe and pervasive as to alter her employment conditions.  But significantly, the behavior most alarming to Wiercioch is non-gender based.  Wiercioch confuses protected sexual harassment with general harassment, emphasizing how Williams was "loud and in my face and he was very demeaning and very condescending."   Dkt. 22, 10:22-24.  Yet there are no facts in the record, other than Wiercioch's opinion, that this aggression is connected to her being female nor does she present evidence that Williams treated his male coworkers differently.  Moreover, she

repeatedly says that Williams threatened her, but predicates these claims upon her perception of his "aggressive" and "intimidating" behavior without supporting facts.[4]

As to the subjective analysis, Wiercioch describes herself as being "disgusted" when she found the pornographic magazines in the break room and seeing "naked cheerleaders" on the television.  Dkt. 22; 123:5; 125:24.  Verizon does not dispute that Wiercioch felt sexually harassed.  Thus, the Court accepts that Wiercioch subjectively felt her working environment was hostile based upon sexual harassment.[5]

However, the record is quite clear that Wiercioch has failed to show a reasonable person in her position would find Williams' sexually based harassment rose to the sufficient level of severity or pervasiveness to alter her terms of employment.  There are only a handful of alleged gender-related incidents: Williams calling Wiercioch a "dumb  bitch" and comparing her to his wife; one incident involving her male coworkers watching a television program with naked cheerleaders; and her discovery of inappropriate magazines in the break room.  Although these two latter examples might be considered more severe, they are isolated episodes that do not rise to the level of creating a hostile work environment.

---

[4]Wiercioch repeatedly stated her fears were founded upon her assumptions, not actual threats by Williams: "I felt that it was – a nonverbal threat was always there.  I was always, I don't know, it was just creepy in there" (Dkt. 22; 114:9-21; "I was getting pretty scared going into work and it was very tense there. . . I felt that this man was going to harm me" (Dkt. 22-1, 287:21-25); "this guy was threatening and intimidating and abusive and loud and he was in my face" (Dkt. 22-1, 244:7-10); "he was very loud, very much in my face, like spitting in my face loud and he was just – it was very upsetting.  It was – I really thought he was going to strike me." (Dkt. 22, 92:10-13).

[5]Wiercioch stated, "I believe that because I'm female, that's why he felt that he could treat me the way he did."  Dkt. 22, 24:13-15.

As to the name calling, Wiercioch does not allege how frequently Williams called her a "bitch" under his breath or told her she was "just like his wife."  But these statements and comparisons are not severe and they are not physically threatening or humiliating.  In fact, there are no admissible facts in the record to show Williams ever threatened to physically harm Wiercioch, and she repeatedly admits that Williams never touched her.

Furthermore, Wiercioch testified that she received positive work evaluations from Verizon throughout the relevant time period.  Her request for medical leave related to her general fear of Williams and other emotional difficulties she was suffering because of deaths in her family, and nothing in the record indicates that gender-related harassment caused any unreasonable interference with her work.

The Court concludes that Wiercioch has not shown her terms or conditions of employment were changed because of the gender-based harassment.  Although the Court sympathizes with Wiercioch's disgust at the pornography viewed in the workplace, the Court finds most of Wiercioch's complaints relate to the personality conflicts that existed between herself and Williams.[6]  Title VII does not protect against rude or aggressive behavior generally, only against discrimination based upon a protected class.  Williams might be an unpleasant co-worker, but Wiercioch's fear of him did not stem from cognizable sexual harassment under Title VII.  Accordingly, Verizon is entitled to summary judgment because

---

[6]Wiercioch aptly summarizes her perspective on Williams' motives for irritating her: "You know, I guess there are no facts [showing his motives].  When you work with someone that's evil and twisted and just likes to play mind games, you come to these conclusions."  Dkt. 22-1, 285:7-9.  Unfortunately for Wiercioch, Title VII does not protect against bullies in the workplace, only unlawful discrimination.

Wiercioch has failed to show, based upon the record, that disputed material facts exist that would allow a reasonable jury to conclude the harassing conduct was sufficiently severe or pervasive.

**3.     No Basis to Hold Verizon Liable**

The final prong of the harassment test requires that the plaintiff show there is a basis to hold the employer liable for the hostile environment.  This generally requires that the employer or a high-echelon official of the employer knew of the harassing action by subordinates, yet did nothing to stop the offensive or humiliating conduct.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 789 (1998).  As the Supreme Court has stated, "the combined knowledge and inaction may be seen as demonstrable negligence, or as the employer's adoption of the offending conduct and its results, quite as if they had been authorized affirmatively as the employer's policy."  *Id.*

Wiercioch loses on this prong.  Every time she reported an offensive incident, Verizon promptly addressed the problem.  Harassing behavior was not allowed to persist unabated.  When Wiercioch first complained to her manager about Williams' behavior in March 2009, Steve Glogowski immediately held a meeting with Wiercioch, Williams, Devoe, and Rich Heyman, who served as a witness.  When Wiercioch reported the one incident where she saw pornography on the break room's television, Verizon removed the television from the break room the very next day.  Finally, when Wiercioch reported to Verizon about the inappropriate magazines she discovered near her locker, the materials were gone upon her return.

To rebut Verizon's motion for summary judgment, Wiercioch merely states that management should have known about the magazines because they were in the break room and the managers could have walked in there at any point.  Dkt. 23; Dkt. 22, 99:24-25.  Yet, in her deposition, Wiercioch admits that she did not complain about the magazines to either of her managers until the second step grievance meeting on November 18, 2009.  Following the meeting, Wiercioch immediately left for vacation and the magazines were gone when she returned.  But Wiercioch stated that "[the magazines] were so obviously there and [her managers] were constantly on that floor that they were either blind or stupid if they didn't see them."  Dkt. 22, 159:18-21.  Wiercioch must rebut Verizon's motion with specific facts in the record, not simply rely on her speculation as to what the managers could have known.  Moreover, even if her managers were aware of the magazines prior to her complaint, they immediately disposed of them upon learning they offended Wiercioch.

When viewed as a whole, no reasonable jury could find Verizon liable for the alleged offensive language used by its employees, the one incident of televised pornography, and the inappropriate magazines left in the break room.  As such, no disputed material facts exist as to the final element of sexual harassment.

Accordingly, the Court grants Verizon's motion for summary judgment as to the claim of sexual harassment based upon a hostile work environment.

It is therefore ORDERED AND ADJUDGED that:

1.    Defendant's Motion for Summary Judgment (Dkt. 21) is GRANTED.

2.      The Clerk of Court is directed to enter final judgment in favor of Defendant and against Plaintiff.

3.      The Clerk of Court is directed to close this case and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida on February 11, 2013.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2011\11-cv-2129.mtsumjud.frm